**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHERI E. DANIELS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:05-CV-1543-L** |
| | § | **ECF** |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

In accordance with 28 U.S.C. § 636(b), the District Court referred this case to the United States Magistrate Judge for recommendation for disposition. The case is before the Court on appeal from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying the claim of Sheri E. Daniels ("Plaintiff") for disability insurance benefits under Title II of the Social Security Act. The Court considered "Plaintiff's Brief," filed March 16, 2006; "Defendant's Brief," filed March 31, 2006; and "Plaintiff's Reply Brief," filed May 3, 2006. For the reasons stated below, the final decision of the Commissioner should be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born on March 5, 1957. (Tr. 456.) Plaintiff filed an application for a period of disability and disability insurance benefits with an onset date of May 2, 2001. (*Id*. at 457.) The "Disability Report," completed on July 30, 2002, identified Plaintiff's impairments limiting her ability to work as steroid-dependent asthma, diabetes, and hypertension. (*Id*. at 109, 101.) At her hearing, Plaintiff testified that she stopped working due to irritable bowel syndrome. (*Id*. at 465.) In addition, consultative psychiatrist Dr. Valerie Tutson diagnosed Plaintiff with depressive disorder on January 9, 2003. (*Id*. at 397, 401.) Plaintiff completed high school and previously worked for

twenty-six years as a service representative and customer service representative where her primary responsibilities included speaking on the telephone with customers and working on a computer. (*Id*. at 456-57, 459-61.)

The Commissioner denied Plaintiff's application for disability benefits initially and upon reconsideration. Plaintiff appealed the decision, resulting in a hearing on February 7, 2005, before Jennie L. McLean, Administrative Law Judge ("ALJ") who issued an unfavorable decision on February 25, 2005. (*Id*. at 10, 13.) Plaintiff, represented by non-attorney Ruth Smith, and Vocational Expert ("VE") Russell Bawden appeared and testified at the hearing. (*Id*. at 453.) Plaintiff testified that she stopped working in May of 2001, due to irritable bowel syndrome. (*Id*. at 465.) The ALJ found that although the combination of Plaintiff's impairments were "severe" under 20 C.F.R. § 404.1520(c), the combination did not equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4 of the Regulations, and Plaintiff's residual functional capacity ("RFC") did not restrict her from returning to her past employment. (*Id*. at 23.) Therefore, the ALJ determined that she was not disabled. (*Id*. at 22-23.)

On June 3, 2005, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's unfavorable decision the Commissioner's final decision. (*Id*. at 5-7.) Plaintiff appealed the Commissioner's final decision to the District Court on August 3, 2005.

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether the decision is supported by substantial evidence, and (2) whether the proper legal standards were applied to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The

Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

It is not the place of this Court to "reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. Substantial evidence is that which a reasonable mind might accept to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). It is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). In order to make a finding of no substantial evidence, the court must determine that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the Court determines that the evidence preponderates in Plaintiff's favor, the Court must still affirm the Commissioner's finding if there is substantial evidence to support those findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner and not this Court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether: (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a mental or physical impairment; (3) the claimant's impairment meets or equals an

impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74. The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). At step five, once the Commissioner shows that other jobs are available to the claimant, the burden shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

For purposes of social security cases, "disability" means an inability to engage in substantial gainful activity because of a medically determinable mental or physical impairment or combination of impairments that could be expected to either last for a continuous period of not less than 12 months or to result in death. *See* 42 U.S.C. § 423(d)(1)(A). In order to establish disability, the record must show that the limitations imposed by Plaintiff's conditions prevent him from engaging in any substantial gainful activity. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).

When reviewing a decision of "not disabled," the Court's function is to determine whether the record as a whole contains substantial evidence that supports the final decision of the Commissioner, as the trier of fact. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane*, 731 F.2d at 1219. Four elements of proof should be weighed to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of examining and treating physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). The ALJ must develop the facts fully and fairly relating to an applicant's claim for disability

benefits. *Ripley*, 67 F.3d at 557. If the ALJ fails to do this, the decision is not substantially justified. *Id*. Nevertheless, the ALJ's decision should be reversed only if Plaintiff shows that he was prejudiced. *Id*. A procedurally imperfect administrative ruling should not be overturned unless the substantive rights of a party have been prejudiced. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997).

### III. ANALYSIS

Plaintiff contends that the ALJ's mental RFC finding is not supported by expert medical opinion evidence or any other substantial evidence on the record. (Pl.'s Br. 1.) Plaintiff argues that the ALJ erred for the following reasons: 1) the RFC finding was inconsistent with the opinions of the state agency medical consultants ("SAMCs"), 2) she failed to apply the appropriate legal standard to the SAMCs' opinions, thereby failing to grant due weight to the SAMCs' opinions, and 3) she prejudiced the Plaintiff when she failed to apply the proper weight to the SAMCs' opinions. (*Id*.)

### A. Mental RFC Finding

Plaintiff contends that the "ALJ's mental RFC finding that Ms. Daniels is only unable to perform complex job instructions is not consistent with the expert opinions of SMACs Jim Cox, Ph.D., and Robert Gilliland, M.D." (*Id*. at 8.) As Plaintiff contends, the ALJ "must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . ." (*Id*. at 10 (citing SSR 96-6p).) However, the Regulations also indicate that the ALJ must consider the SAMC's finding "except for the ultimate determination about whether [the claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(i). Furthermore, "[a]s a general rule, where the rights of individuals are affected, an agency must follow its own procedure,

even where the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) (citing *Morton v. Ruiz*, 415 U.S. 199 (1974)). "Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand." *Id.* Therefore, a court should be able to determine from the ALJ's decision whether or not the ALJ ignored the opinion of the SAMC. *See Hambrick v. Apfel*, No. 3:97-CV-1262-D, 1998 WL 329368, at *3 (N.D. Tex. June 11, 1998) (Fitzwater, J.) (case remanded because the court was unable to determine whether or not the ALJ considered the state agency review physician's opinion).

In addition, the ALJ must develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. In *Martinez*, the Fifth Circuit outlined the four elements of proof to be weighed in determining whether there is substantial evidence of disability, namely, (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work history. 64 F.3d at 174. The *Martinez* court determined that because the medical examinations, test results, and recommendations from physicians in the record supported the ALJ's decision, substantial evidence supported the Commissioner's decision. *Id.*

Plaintiff concedes, and the Commissioner reiterates, that the SAMCs' assessments are consistent with Dr. Tutson's observations. (Pl.'s Br. 14; Def.'s Br. 6.) Based on her evaluation of Plaintiff, Dr. Tutson concluded that although Plaintiff reported diminished capability to perform activities of daily living, she demonstrated good social skills and no significant deterioration in areas of concentration, persistence, and pace except for occasionally losing her train of thought. (Tr. 400-01.) After review of Dr. Tutson's observations, Dr. Cox, one of the SAMCs, completed Form SSA

2506-BK noting moderate limitations in Plaintiff's abilities in maintaining concentration, persistence or pace, but only mild limitations in restriction of daily living activities, maintenance of social functioning, and no episodes of decompensation. (*Id.* at 418.)

Based on the plaintiff's testimony regarding the activities involved in her prior positions and the testimony of the VE, the ALJ determined that Dr. Tutson's evaluation and the SAMCs' assessments demonstrated Plaintiff's ability to perform her prior job responsibilities in her current mental and physical state. (*Id.* at 22.) At the hearing, Plaintiff testified that her prior job responsibilities primarily entailed talking with customers, working on a computer, and writing reports. (*Id.* at 461.) The SAMCs' "Capacity Assessment" forms indicated Plaintiff's capacity limitations included sedentary work in an environment free of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (*Id.* at 423, 426.)

With the testimony and the SAMCs' assessment form, the ALJ posed hypothetical questions to the VE to determine whether Plaintiff's RFC permitted her to return to work in her former position. (*Id.* at 473-78.) The VE testified that at an exertional limitation level of medium, nonexertional limitations of no concentrated exposure to fumes, odors, dusts, and gases, a climate controlled work environment, and simple to detailed, but not complex tasks, the Plaintiff would retain the RFC to return to her job. (*Id.* at 475.)

After reviewing the SAMCs' assessment forms, the vocational expert's testimony, and Plaintiff's treating physician's evaluations, the ALJ determined that Plaintiff's mental RFC enabled her to perform her past relevant work as a customer service representative and a service representative. (*Id.* at 23.) The ALJ did not ignore the opinions of the SAMC, rather the ALJ's reference to both Dr. Tutson's evaluation and the SAMCs' assessment forms demonstrated that the

ALJ considered their opinions. (*Id.* at 18-19.) Additionally, like *Martinez*, where the ALJ demonstrated reliance on the medical opinions in determining whether the claimant suffered from a disability, in this case the ALJ's decision is supported by substantial evidence that she demonstrates when she refers to Dr. Tutson's evaluation and the SAMCs' assessment. (*Id.*) Plaintiff argues that the ALJ's decision regarding Plaintiff's RFC is inconsistent with the SAMCs' assessment, but this court finds the ALJ's decision consistent with Dr. Tutson's evaluation and the subsequent SAMCs' assessment forms.

Plaintiff argues that the ALJ inaccurately interpreted the SAMCs' assessment that "[c]lt (claimant) can understand, remember, [and] carry out simple instructions, make simple decisions, attend [and] concentrate for short time," when she concluded that Plaintiff could "understand, remember, and carry out simple to detailed, not complex job instructions." (Pl. Br. 9; Tr. 22.) Additionally, Plaintiff argues that the ALJ improperly concluded from the SAMCs' assessment that Plaintiff's "depressive disorder would not hinder her ability to perform unskilled work . . . ." (Pl.'s Br. 8.) But as the Commissioner accurately notes, the SAMCs' assessment verifies that Plaintiff possesses the ability to perform basic work activities that the ALJ refers to as unskilled work abilities. (Def.'s Br. 3-4 (citing Tr. 406).) Furthermore, as 20 C.F.R. § 404.1527(f)(2)(i) provides, the ALJ makes the "ultimate determination" regarding the plaintiff's disability status based on all the evidence in the record. Therefore, the ALJ's RFC finding is consistent with the opinions of the SMACs.

**B. Legal Standard**

Plaintiff also contends that the "ALJ failed to apply the appropriate legal standard to weigh the State agency medical consultants' opinions." (Pl.'s Br. 9.) In finding the ALJ's decision

consistent with the SAMCs' findings, this Court also finds that the ALJ applied the appropriate legal standard to the SAMCs' assessment. As the Commissioner correctly states, the ALJ "[is] not bound by any findings made by state agency medical or psychological consultants, or other program physicians or psychologists." (Def.'s Br. 4 (citing 20 C.F.R. § 404.1527(f)(2)(i)).) However, the ALJ is required to "consider the findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . ." 20 C.F.R. § 404.1527(f)(2)(i). The plaintiff directs the court's attention to a part of 20 C.F.R. § 404.1527(f)(2)(ii) which indicates that the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ." (Pl.'s Br. 10.)

In her decision, the ALJ noted Dr. Tutson's observations regarding activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining of concentration, persistence, or pace, which are the three areas evaluated in determining whether a person's impairments meet the "B" criteria when evaluating the severity of the claimant's impairments. (Tr. 17-18.) From Dr. Tutson's evaluation, the SAMCs then completed their RFC assessments and determined that the claimant's depression had only a mild affect on her daily living activities, a mild affect on her social functioning, and a moderate affect on her maintaining concentration, persistence, or pace. (*Id*. at 19.) In her decision, the ALJ noted both of the findings as evidence supporting her conclusion that Plaintiff's RFC did not preclude her from returning to her prior work. (*Id*.)

### C. Due Weight

Plaintiff further contends that in "[a]pplying the appropriate legal standard, the State agency medical consultants' opinions should have been granted due weight." (Pl.'s Br. 12.) This Court

finds that the ALJ afforded the appropriate weight to the SAMCs' assessment. In assessing the weight given to a non-examining SAMC opinion, the court must consider supportability for the opinion in the medical findings, consistency with the record as a whole, and specialization of the physician in the pertinent medical issue. 20 C.F.R. § 404.1527(d). Plaintiff confirmed in her evaluation by Dr. Tutson that she was not under the care of a psychiatrist, nor ever sought the care of a psychiatrist. (Tr. 398.) As Plaintiff's brief notes, Dr. Tutson's examination report supports the SAMCs' assessment, the SAMCs' opinions are consistent because they are identical, and the SAMCs' are specialists regarding the medical issues impairing Plaintiff. (Pl.'s Br. 13-14.) In her decision, the ALJ sets forth Dr. Tutson's evaluation which provides supportability and consistency for the SAMCs' assessment. (Tr. 18-19.) The ALJ also states in her opinion that the law requires her to consider all medical opinions provided, including SAMC assessments which she explicitly addresses noting the findings and their relation to Plaintiff's RFC. (*Id*. at 19.)

The ALJ appropriately applied the legal standards in her evaluation of the criteria "B" factors presented in Dr. Tutson's evaluation and used in the SAMCs' assessment, which provided the evidence she needed to determine that Plaintiff had the RFC to return to work. The ALJ's decision also provided evidence of the weight she afforded the SAMCs' RFC assessment by stating the applicable law and noting the findings by both Dr. Tutson and the SAMCs that demonstrated supportability and consistency among the specialists who performed the evaluations. (Tr. 19.) Therefore, the Commissioner's decision should not be reversed on this basis.

### D. Prejudice Suffered by Plaintiff

Plaintiff asserts that she was prejudiced by the ALJ's failure to apply the appropriate legal standard and grant the SAMCs' opinions due weight. (Pl.'s Br. 15.) The Social Security

Administration established SSR 96-6P to provide guidance to the administrative law judges regarding the consideration due to the findings of fact by the SAMC. *See* SSR 96-6P. As previously mentioned, an agency has the duty to adhere to its own procedures. *Hall*, 660 F.2d at 119. As the guidelines require, the ALJ must review any non-examining physician's opinion and must explain the weight given to the opinion. SSR 96-6P. In this case, the ALJ clearly noted the SAMCs' findings, demonstrated the assessment's consistency with the other medical evidence presented, and ruled appropriately on the claimant's RFC. (Tr. 19.) The ALJ's decision regarding Plaintiff's RFC did not prejudice Plaintiff because the ALJ applied the appropriate legal standard and explained the weight afforded to the SAMCs' opinion.

## E. Treating Physician's Controlling Weight[1]

When determining the weight to give the treating physician's opinion, the ALJ should consider the factors set out in § 404.1527(d)(2)[2] which include the length of the treatment

---

1. Although the plaintiff did not raise the issue, the court finds it necessary to address the ALJ's consideration of the treating physician's evaluation.

2. 20 CFR § 404.1527(d)(2). Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

  (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d)(2); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) ("[A]n ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."). The ALJ must give controlling weight to the treating physician's opinion when that opinion is supported by medical evidence and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). This Court finds that the ALJ in this case properly addressed the weight given to the treating physician's

---

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR § 404.1527(d)(3). Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 CFR § 404.1527(d)(4). Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

20 CFR § 404.1527(d)(5). Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 404.1527(d)(6). Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

opinion as provided in the guidelines.

Dr. Michelle Ibanez treated Plaintiff between May 2003 and January 2005. (Tr. 19.) The ALJ's opinion notes that Dr. Ibanez primarily treated Plaintiff due to symptoms arising from her asthma, chronic diarrhea, and diabetes. (*Id*.) In addition, Dr. Ibanez examined Plaintiff due to complaints of chest pain, back pain, and tingling in her feet. (*Id*.) The record indicates, and the ALJ notes, that Dr. Ibanez continued treatment of Plaintiff's ailments by prescribing inhalers for her asthma, Lomotil for her chronic diarrhea, and Ibuprofen for her chest pain. (*Id*.) Dr. Ibanez indicated in the Physical Capacities Evaluation she completed that Plaintiff could only sit three to four hours in an eight-hour workday and stand and/or walk for two hours in an eight-hour workday. (*Id*.) The ALJ's decision also notes that Dr. Ibanez found Plaintiff "incapable of repetitive motion with her hands and feet . . ." resulting in restrictions regarding carrying weight over five pounds, mobility, and exposure to dust, fumes, and gases. (*Id*.)

The ALJ may reject a treating physician's opinion for good cause. "The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). In *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001), the plaintiff submitted a treating physician's medical opinion based on three more treating physicians' evaluations stating that the plaintiff could not sit longer than four hours a day in thirty minute increments. *Id*. at 618. But the ALJ rejected the opinion and denied benefits based on the opinion of a non-treating physician's opinion that indicated the plaintiff could sit six hours. *Id*. The court reversed the ALJ's decision for the ALJ's failure to provide good cause for rejecting the

treating physician's opinion by neglecting to consider the six factors in the regulations. *Id.* at 621.

Lack of supporting medical evidence justifies an ALJ's decision when it contradicts a treating physician's opinion. Similar to the treating physician in *Myers*, Dr. Ibanez restricted her patient from engaging in activities that would permit her to work an eight-hour workday. (Tr. 431.) However, the ALJ in this case, unlike in *Myers*, explained in her decision that the restrictions imposed were not supported in the medical documentation. (Tr. 21.) The ALJ rejected the limitations citing the fact that the claimant had never been treated for back pain and that prior testing indicated her condition did not require surgery or other aggressive measures. (*Id.*) In addition the ALJ notes that Dr. Ibanez's opinion lacks objective findings to support her conclusion that Plaintiff cannot engage in repetitive activity involving her hands or feet. (*Id.*) The ALJ's opinion indicates that Dr. Ibanez did not, for example, present EMG studies or other testing to support her conclusions regarding peripheral neuropathy that would limit repetitive activity. (*Id.*) The lack of medical evidence supports the ALJ's decision to reject the treating physician's opinion and demonstrates the ALJ's adherence with the regulations.

The ALJ provided good cause for rejecting the treating physician's opinion, and considered the factors set forth by the regulations. According to the ALJ's written decision, Dr. Ibanez treated Plaintiff from May 2003 to January 2005. (Tr. 19.) Although the ALJ's decision does not report the frequency of examinations conducted by Dr. Ibanez, the decision does demonstrate that the physician's conclusions were not supported by medical evidence and were not consistent with prior examinations by treating and non-treating physicians. (*Id.* at 19, 21.) Unlike *Myers*, where the court reversed the ALJ's decision for failing to consider the factors set forth in the regulations, the ALJ in this case noted the length of treatment by the physician, provided specific examples of lack of

supportability, and provided details of other treating and non-treating physicians opinions in order to demonstrate inconsistency on the part of Dr. Ibanez. (*Id*.) The ALJ's decision provided good cause for rejecting the treating physician's decision.

## IV. RECOMMENDATION

In light of this Court's extensive review of the record in this case, this Court hereby finds that substantial evidence supports the Commissioner's decision. Therefore, this Court recommends that the final decision of the Commissioner be affirmed.

It is so recommended. August 1, 2007.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).